**U. S. OIL CO., INC., Plaintiff,**

v.

**KOCH REFINING CO., Defendant.**

No. 79–C–659.

United States District Court,
E. D. Wisconsin.

July 7, 1981.

John E. Varnum, Batzell, Nunn & Bode, Washington, D. C., Gilbert W. Church, Foley & Lardner, Milwaukee, Wis., for plaintiff.

Wayne E. Babler, Jr., Quarles & Brady, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

There are several motions currently pending before the Court which are ripe for resolution. These motions are the subject of this memorandum and order.

### Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff, U.S. Oil, has moved to amend its complaint for a second time since it was originally filed in August of 1979. The proposed second amended complaint adds three defendants and one cause of action. The new defendants are, Koch Industries, the parent corporation of the defendant Koch Refining, and two other subsidiaries of the parent corporation, Wood River Oil & Refining Co. and Koch Fuels, Inc. (formerly Gustafson Oil Co.). The proposed seventh cause of action alleges that the defendants violated 10 CFR § 210.62, which prohibits changes in the "normal business practices in effect during the base period specified in Part 211 for ... allotted products ...; discrimination among purchases of allocated products ... and practices which constitute means to obtain a higher price than permitted by the regulations." 10 CFR § 210.-62(a)(b)(c). Plaintiff alleges that defendants changed their credit policies and discriminated against the plaintiff in the pricing of allocated products. For these violations, plaintiff demands consequential and incidental damages.

Defendant Koch Refining Co. opposes plaintiff's motion to amend contending that the new defendants will be seriously prejudiced and that the seventh cause of action seeking consequential and incidental damages is barred by this Court's previous decision regarding such damages in a suit for overcharges. The claimed prejudice arises from the defendant's assumption that plaintiff will seek to relate its cause of action against the new defendants back to the date of the original complaint. Assuming this to be true, defendant asserts that the new defendants will be prejudiced by their inability to assert the statute of limitations as a defense. In addition, defendant contends that the plaintiff has been fully aware of the proposed defendants since the inception of the lawsuit. Therefore, it argues, the motion is untimely.

With regard to the new proposed cause of action, defendant contends that it is merely a restatement of a claim this Court held was invalid in its earlier decision in September of 1980. *U. S. Oil v. Koch Refining*, 497 F.Supp. 1125, 1126 (E.D.Wis.1980). Because the claim is based on an allegation of overcharges by the defendant, defendant alleges that, in accordance with the Court's prior ruling, consequential and incidental damages are not recoverable.

Under Rule 15 of the Federal Rules of Civil Procedure, the Court may grant leave to file an amended complaint if it determines that justice requires it. The decision is left to the Court's sound discretion. In exercising that discretion, however, the Court should consider any possible prejudice to the defendant and whether or not the amendment might be futile. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); see 6 Wright & Miller, Fed.Prac. & Pro. § 1487 n. 58.

In examining the proposed second amended complaint, the Court concludes that the defendant has not demonstrated any significant prejudice that may result from joining the other defendants. In addition, the Court finds no prejudice in the plaintiff's failure to amend at an earlier time. Furthermore, although plaintiff suggests in its reply brief that service of process on the defendant Koch Refining Company is sufficient, the Court does not reach this issue because defendants have not had an opportunity to respond. Therefore, any question regarding the jurisdiction of the Court over the new defendants must await further motions.

Defendants' objections to the new cause of action stated in the proposed second amended complaint merits some discussion. In its previous ruling, the Court held that section 210 of the Economic Stabilization Act of 1970 (ESA) provided the exclusive remedy for an action for overcharges. The Court held that "consequential damages are not recoverable in an action for overcharges." 479 F.Supp. at 1133. Plaintiff's proposed seventh cause of action seeks consequential damages for the defendant's violation of 10 CFR § 210.62(a)(b) and (c). Plaintiff alleges a change in credit policy toward it and price discrimination.

■ The allegations of a change in credit practice or policy towards the plaintiff differs in kind from an allegation of overcharging. Consequently, the Court's ruling excluding consequential damages in an action for overcharges would not be controlling. Under the liberal interpretation of 210(a) of the ESA adopted by the Temporary Emergency Court of Appeals in *Newman Oil v. Atlantic Richfield Co.*, 597 F.2d 275, 279 (TECA), *cert. denied, Atlantic Richfield Co. v. Newman Oil*, 444 U.S. 842, 100 S.Ct. 84, 62 L.Ed.2d 55 (1979), the plaintiff's claim is not futile or frivolous. Plaintiff's claim of consequential damages because of alleged price discrimination is similar to an action for overcharges. Plaintiff alleges that it was charged more for allocated products than the defendant could lawfully charge. However, in a very conclusory fashion, it also alleges that defendant discriminated against it by charging it presumably more than others in its class.

Although plaintiff pleads an overcharge in its proposed seventh cause of action, there is no requirement under section 210.-62(b) that there be an overcharge. In addition, a change in credit policies toward the plaintiff need not involve an overcharge as defined in section 210(c) of the ESA. Because of these differences between a claim under section 210(b) of the ESA and a claim under 10 CFR § 210.62, the Court finds that section 210(b) of the ESA does not bar a claim for consequential damages. Under section 210(a) of the ESA, a claim for conse-

quential damages for a violation of section 10 CFR § 210.62(a)(b) and (c) is permissible. *See Eastern Airlines v. Mobil Oil Co.*, 512 F.Supp. 1231 (S.D.Fla.1981). (10 CFR § 210.62 creates a separate and distinct cause of action under 210(a) of the ESA). Based on the foregoing, the Court finds that plaintiff's motion to amend its complaint must be and is hereby granted.

### *Motion to Strike the Defendant's Sixth Affirmative Defense*

■ The plaintiff has also moved to strike the defendant's sixth affirmative defense, alleging that the defense is insufficient as a matter of law. Under Rule 12(f) of the Federal Rules of Civil Procedure, a court may order stricken from any pleadings any insufficient defenses or scandalous matters. A motion to strike an affirmative defense will be denied "if the defense set forth is sufficient as a matter of law or if it fairly presents a question of law or in fact that the court ought to hear." *Angel v. Ray*, 285 F.Supp. 64, 65 (E.D.Wis.1968). In determining whether to grant a motion to strike, the Court must treat all well pleaded facts as admitted and cannot consider matters outside the pleadings. 5 Wright & Miller Fed.Prac. & Pro. § 1380 at 786–88. If matters outside the pleadings are presented and considered, the motion shall be treated as a motion for partial summary judgment and the responding party should have an opportunity to conduct discovery and present evidence in opposition to the motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. While plaintiff has submitted matters outside the pleadings, the Court will not consider them. Therefore, the Court will treat this as a motion to strike under Rule 12 of the Federal Rules of Civil Procedure.

Defendant's sixth affirmative defense states:

> There is no case in controversy for the reason that the plaintiff has recovered all alleged overcharges in the form of prices it charged to its customers as allowed by law and plaintiff has no standing to assert the interests of its customers in this action.

The essence of this defense is that plaintiff was not harmed by any overcharges because it passed on these overcharges to its customers.

■ Plaintiff objects to the assertion of the pass-on defense because it contends that the Supreme Court in *Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968) and *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), barred the use of such a defense. *Hanover Shoe, Inc. v. United Shoe Machine Corp.*, 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231, was an antitrust action for treble damages for alleged overcharges which resulted from the defendant's violation of the antitrust laws. As one of its defenses, the defendant asserted that plaintiff was not damaged because it passed on all of its overcharges to its customers. The Supreme Court held that defendant could not allege and present a pass-on defense.

The Court based its decision on two grounds. First, it found that proving such a defense would involve "long and complicated proceedings involving massive evidence and complicated theories." *Id.* at 493, 88 S.Ct. at 2231. To prove the defense, the Court noted that not only would defendant have to prove that the plaintiff passed on all costs but also that the higher prices did not effect the plaintiff's profit margin or total sales and its pricing methods. *Id.* The second reason for barring the pass-on defense as enunciated by the Court was that in all likelihood, violators of the antitrust laws, if allowed to assert the defense, would be able to retain "the fruits of the illegality." The Court reasoned that the ultimate consumer who bore the cost of the overcharges would have such a small stake in any potential lawsuit that they would never bring suit. *Id.* at 494, 88 S.Ct. at 2232. Consequently, one of the mechanisms established by the Congress to curb the violations of the antitrust laws would be rendered ineffective. *Id.*

Although preventing the use of the pass-on defense in most instances, the Court did recognize one limited exception. Where "an overcharged buyer has a pre-existing cost plus contract" with the ultimate purchaser, the Court held that the consideration of complexity would not be present and, therefore, the defense could be utilized.

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707, the Court reaffirmed its decision in *Hanover Shoe* and extended it to the offensive use of a pass-on theory. Plaintiff respondents in *Illinois Brick Co.* were the ultimate purchasers of concrete bricks produced by defendants. Plaintiffs alleged that the direct purchasers of the bricks from the defendants had passed on all the overcharges stemming from the defendants' antitrust violations to them. In prohibiting the plaintiffs from presenting a pass-on theory to gain standing, the Court again stressed the additional complexity that would be involved in proving such a theory. It also found that barring the offensive use of the pass-on theory was necessary to avoid the possibility that defendants, who under *Hanover Shoe* were precluded from asserting the pass-on defense against the direct purchases, might be subjected to multiple liability for the same overcharge. A need to prevent such a result, coupled with the Court's continuing belief in the rationale of *Hanover Shoe*, compelled it to bar the offensive use of the pass-on theory. The Court did, however, note that the same exceptions noted in *Hanover Shoe* were applicable when a plaintiff attempts to use a pass-on theory to gain standing. In discussing the exceptions, the Court noted:

That in pre-existing cost plus contracts 'the purchaser is insulated from any increase in its sales as a result of attempting to pass on the overcharge because its customer is committed to buying a fixed quantity regardless of price. The effect of the overcharge is essentially determined in advance without reference to the interaction of supply and demand that complicates the determination in the general case.' *Id.* at 735–36, 97 S.Ct. at 2069–70.

The Court also noted another possible exception where the direct purchaser is owned or controlled by the ultimate consumer. *Id.* at 735 n. 16, 97 S.Ct. at 2070 n. 16.

Plaintiff contends that the reasoning of the Supreme Court in *Hanover Shoe* and *Illinois Brick* is equally applicable to the case at bar even though it is not an antitrust action. Plaintiff contends with some validity that the same concerns of complexity in the discovery and proof, and enforcement of the statute are present when defendant asserts a pass-on defense in an action based on an Emergency Petroleum Allocation Act of 1973 (EPAA) and the ESA for overcharges.

Defendant, in response, raises two arguments. First, it contends that the concerns of the Court in *Hanover Shoe* and *Illinois Brick* are lacking here and that *Illinois Brick* itself compels a finding that defensive use of the pass-on theory is appropriate. Second, it contends that this situation comes within the exceptions set out in *Hanover Shoe*.

In attempting to distinguish *Hanover Shoe* and *Illinois Brick*, defendant contends that the concerns of complexity of discovery and proof are not present here. Because the plaintiff's price per gallon was set according to a precise, simple formula, *see* 10 CFR § 212.93, defendant maintains that there is no difficulty in ascertaining the methodology of plaintiff's pricing. In addition, because lost profits are not part of this action, defendant argues that the effect on total sales volume or profit is not relevant. Even if it were relevant, defendant points out that plaintiff has alleged that it sold everything it was supplied and could have sold more if defendant had allocated it additional surplus product.

Accepting as true defendant's allegation that the plaintiff passed on all overcharges, the Court finds that defendant's position has some merit. Based on those facts, the pass-on defense would not be as complicated as it would be in an antitrust case, especially because lost profits are not involved here. If, however, the plaintiff did not pass on all of its costs as alleged, some of the difficulties referred to by the Supreme Court in *Hanover Shoe* arise. In particular, there would be a need for extensive discovery to determine what portion of the costs were not passed on and whether those costs were passed on at a later date pursuant to the DOE's regulations. Nevertheless, because plaintiff is required to keep extensive records on its costs, the complexity of the needed discovery would not be as great as it would be in an antitrust action.

Defendant also claims that because the Department of Energy (DOE) has authority to seek restitution for overcharges on behalf of all purchasers, the second concern of the Supreme Court in *Hanover Shoe* is obviated. Defendant asserts DOE's enforcement powers are sufficient to ensure that the price control law will be obeyed. Finally, it notes that the concern for enforcement is somewhat moot, because the regulations have been repealed. Executive Order 12287, 47 Fed.Reg. 9909 (Jan. 28, 1981).

That the regulations have been repealed, is not a sufficient reason to uphold the use of the pass-on defense. Furthermore, defendant's argument regarding DOE's enforcement powers overlooks the intent of Congress in creating the dual enforcement mechanism. Obviously, by providing for DOE enforcement in private actions, Congress was acting to assure effective enforcement of the statute. Supplementing DOE's enforcement powers with the private cause of action increases the likelihood that the statute would be obeyed and enforced. Implicit in the dual system is a recognition that the DOE could not alone enforce the statute. Granting a private cause of action to persons overcharged promotes the effective enforcement of the Act.

If those direct purchasers who were overcharged are not allowed to bring suit because they passed on the overcharges, then the potential effectiveness of the enforcement mechanism is lessened. As with the ultimate consumer in *Hanover Shoe*, there is little reason to believe that any of the ultimate consumers of oil products sold by U.S. Oil would bring suit against Koch. This result would be contrary to the inten-

tion of Congress in establishing the dual system. See S.Rep.No.92–507, Stabilization Act Amendments, PL. 92–210, 1971 U.S. Code & Cong.Ad.News 2283, 2291; H.Rep. No.93–531, Emergency Petroleum Allocation Act of 1973, PL. 93–159, 1973 U.S.Code & Cong.Ad.News 2582, 2599.

As the defendant has noted, there is no doubt that the present system creates a potential for double liability. Conceivably, a firm could be ordered to comply with a DOE order of restitution and be liable for a judgment arising from a private suit. To the extent that a DOE order of restitution or other monetary remedy represented a total sum of all overcharges, any additional judgment from a private lawsuit would create double liability. The courts could, of course, reduce any potential exposure by offsetting any amount a particular plaintiff might recover by way of DOE's actions against any recovery for a private suit. DOE could also offset recoveries in private suits against any restitution order. Furthermore, by preventing defendants from asserting the pass-on defense, the Court would have to prevent the use of the pass-on theory by indirect purchases. *Illinois Brick Co. v. Illinois, supra.* Again, the defendant's potential exposure would be reduced.

Defendant contends that any restriction of the pass-on defense would be inequitable because the theory, in essence, would still be available for the indirect purchasers. Defendant equates the DOE's enforcement procedures with the use of the pass-on theory by indirect purchases. The Court, however, disagrees. The DOE, in enforcing the price regulations, is acting on behalf of the entire public. As the primary enforcer of the regulations, the DOE's actions are designed to ensure overall enforcement of the Act. Claims of individual purchasers are not a consideration of DOE. A private litigant, to the contrary, is concerned only with enforcing its rights and is unconcerned with any public benefit that might result. It is undeniable, however, that the public does benefit by such private suits.

Prohibiting the use of the pass-on theory, either offensively or defensively in this situation, is, in fact, more equitable than it is in the antitrust area. Effective enforcement of the regulations is ensured, and indirect purchasers to the extent they benefit as members of the public from DOE's actions, recover some compensation for any overcharges which they may have paid. Finally, defendants like Koch are insulated from suit by indirect purchases.

Although the Court would agree that the concerns of complexity are not as great here as they were in *Hanover Shoe* and in *Illinois Brick*, the Court finds the concerns for effective enforcement of the Act are sufficient to prevent the use of the pass-on theory by defendant.

Defendant's second claim is that the situation before the Court comes within the exception recognized in *Hanover Shoe* and *Illinois Brick*. Koch alleges that the formula used for computing the maximum allowable price for covered products is equivalent to a cost plus contract. Under the regulations, the maximum legal selling price is determined by adding together the acquisition costs, which would contain the overcharge, the tax costs and a fixed price per gallon figure. 10 CFR § 212.93. Because it has alleged that plaintiff has passed on all its overcharges, it contends that the formula brings this case within the recognized exception.

The Court disagrees. The operation of the formula simplifies the calculation and proof necessary to show a pass-on of overcharges. The formula, however, sets only the maximum price that a seller can set. It does not require the seller to sell at that price. In addition, unlike the situations alluded to in *Hanover Shoe* and *Illinois Brick*, there is no contract between the seller and the ultimate consumer which will require the ultimate consumer to purchase gasoline products from the seller. The market forces still have an effect on the seller even if he cannot be compensated for them. Based on the foregoing, the Court finds that defendant's sixth affirmative defense is insufficient as a matter of law; plain-

tiff's motion to strike the sixth affirmative defense is granted.

### Discovery Motions

 There are several discovery motions before the Court. A cursory reading of these motions and the accompanying papers in support and in opposition to the motions reveal a growing animosity between counsel for the respective parties. Each party's moving papers contain allegations and insinuations regarding the other party's motions. It also appears to the Court that many of the problems raised in the motions could be resolved by counsel without the Court's intervention. Furthermore, if left unsupervised, the parties will take an already complex matter and make it even more so. Therefore, the Court has decided to appoint a special master to oversee the preparation of this case for trial.

To assist the parties in their presentations for trial and to narrow the issues for trial, the special master may review the files in this action, including any materials orders of the Court. The special master shall be empowered to conduct both formal and informal proceedings as he or she may deem necessary and may hold meetings with counsel to clarify and resolve legal and factual issues dividing the parties. The special master shall have authority to subpoena witnesses and to take recorded testimony under oath if deemed necessary.

Prior to the Court's consideration of any discovery motions, the special master is requested to meet with the parties to attempt to resolve the outstanding discovery disputes. Thereafter, if efforts in this regard are unsuccessful, the special master shall submit a report, with copies to counsel, with recommendations for the disposition of the discovery motions.

Each side will bear half of the fees and expenses of the special master, whose fees shall not exceed $75 per hour. The prevailing party will not be permitted to tax costs for such fees and expenses. This will be made pursuant to the Court's general equity powers and not pursuant to Rule 53 of the Federal Rules of Civil Procedure.

The Court will accept suggestions from the parties as to the special master to be appointed in this case. It does, however, recommend to the parties Christine M. Wiseman, Assistant Professor of Law at Marquette University. Ms. Wiseman has been used by this Court as a special master in previous cases, and is highly qualified for the job. The parties are to notify the Court within ten (10) days of the date of this order of any other recommendations they wish to make or of their acceptance of Ms. Wiseman as a special master in this case.