In the Matter of **BALDWIN–UNITED CORPORATION, D.H. Baldwin Company, et al., Debtors.**

**BALDWIN–UNITED CORPORATION, Plaintiff,**

v.

**Morley P. THOMPSON, Defendant.**

Bankruptcy No. 1–83–02495.
Adv. No. 1–84–0119.

United States Bankruptcy Court, S.D. Ohio, W.D.

Feb. 12, 1985.

Linda J. Smith, David Pettit, Mark D. Plevin, O'Melveny & Myers, Los Angeles, Cal., for plaintiff.

James J. Slattery Jr., Gehrig, Parker & Baldwin, Cincinnati, Ohio, for defendant.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

This Chapter 11 adversary proceeding is before the Court pursuant to the Debtors' motions to strike or dismiss certain affirmative defenses, claims of setoff, counterclaims, and a jury demand filed by defendant, Morley P. Thompson.

The Debtors commenced this action on May 23, 1984 by filing a relatively simple turnover complaint seeking to collect on four installment loans made by Baldwin-United Corporation ("BU") to Thompson while he was president of the company. The loans were issued pursuant to a company program whereby employees could borrow money to purchase BU stock. Between April 16, 1979 and July 16, 1982, Thompson executed four promissory notes totalling $1,061,500 to purchase 34,500 shares of BU common stock. All four of the loans are alleged to be in default, and the accelerated principal amount due and owing is alleged to be $869,519.59.

The litigation became considerably more complicated when on July 20, 1984, Thompson filed his answer containing nine affirmative defenses combined with four counterclaims and setoffs. The answer also sets forth a jury demand, apparently as to all issues in the proceeding. In the first five counts of his affirmative pleading, Thompson seeks a setoff or award for wrongful termination from his position as president of the company; deprivation of severance pay which he claims he was owed; indemnification pursuant to BU's by-laws for attorney fees and expenses incurred in defending actions brought against Thompson in his capacity as an officer and director of the company; and failure to pay principal and interest owed on a debenture purchased from BU. Thompson's fifth affirmative defense specifically alleges that Thompson is entitled to set off the installments due on the notes against the damages owed for wrongful termination, severance pay, defense indemnification, and default on the debenture.

In addition, on July 25, 1984, Thompson filed six lengthy proofs of claim in these consolidated cases, three of which assert the same claims as those raised in his answer in this adversary proceeding. (See Case 1–83–02495, claim nos. 7346, 7412, and 7418.)

The sixth affirmative defense alleges that this Court lacks subject matter jurisdiction to enter a judgment, asserting that this is a "related to" adversary proceeding under 28 U.S.C. § 157(c)(1). Thompson also appears to be asserting that even if this is a core proceeding, this Court may not constitutionally render a final judgment under the holding of *Marathon*. The seventh affirmative defense challenges the constitutionality of Sections 106 and 121 of the Bankruptcy Amendments of 1984, while the eighth challenges the authority of this Court to conduct a jury trial. Finally, the ninth affirmative defense urges this Court to abstain from hearing this proceeding.

■ At a telephonic pretrial conference held on September 6, 1984, the Court noted that the interests of the parties would be best served by deciding at the outset the jurisdictional issues raised by the defendant. Counsel for the Debtors thereafter filed the instant motions to strike and dismiss both the jurisdictional defenses and Thompson's other claims.[1] The parties submitted briefs in support of their respective positions. On January 21, 1985, the Court heard oral argument on the issues presented.

As a logical starting point, we must first address Thompson's challenge to the constitutionality of the undersigned's appointment pursuant to Section 106 and Section 121[2] of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments"), since we may go no further if we accept Thompson's contention.

The intent and effect of Sections 106 and 121 were to fill the vacuum in the Bankruptcy Court created by the expiration of the transition period under the Bankruptcy Reform Act of 1978 and the date of enactment of the 1984 Amendments, which were

1. While not generally favored, a motion to strike is the appropriate vehicle for challenging the legal sufficiency of defenses. Such motions are governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Cf. U.S. Oil Co., Inc. v. Koch Refining Co.*, 518 F.Supp. 957, 959 (E.D.Wisc.1981); 2A *Moore's Federal Practice*, ¶ 12.21[3] (2d ed. 1984).

2. Section 106 reads in pertinent part as follows:
(a) Notwithstanding section 152 of Title 28, United States Code, as added by this Act, the term of office of a bankruptcy judge who is serving on the date of enactment of this Act is extended to and expires four years after the date such bankruptcy judge was last appointed to such office or on October 1, 1986, whichever is later.
Section 121 reads in pertinent part:
(b) Section 404 of such Act [Public Law 95–598] is amended in subsections (a) and (b) by striking out "June 27, 1984" each place it appears and inserting in lieu thereof "the day before the date of enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984."
(e) The term of office of any bankruptcy judge who was serving on June 27, 1984, is extended to and shall expire at the end of the day of enactment of this Act.

passed by Congress on June 29, 1984, but not signed by the President until July 10, 1984. These two sections also continued the terms of office of all sitting bankruptcy judges from the passage of the 1984 Amendments until their enactment, and continued the terms of all bankruptcy judges sitting on the date of enactment until at least October 1, 1986.

■ Thompson asserts that no Bankruptcy Court or judges lawfully existed after June 27, 1984, and that the retroactive provisions passed by Congress to continue the terms of bankruptcy judges effectuated an appointment of those judges in violation of Article II, Section 2 of the U.S. Constitution ("the Appointments Clause").

While this latest challenge to the validity of the Bankruptcy Court system was very much in vogue at the time defendant raised it, it has since been rejected by all three of the District Courts which have considered it. *In re Benny,* 44 B.R. 581, 12 B.C.D. 495 (N.D.Ca.1984); *In re Tom Carter Enterprises,* 44 B.R. 605, 12 B.C.D. 536 (C.D. Ca.1984); *In re Wasatch Factoring, Inc.,* Misc. No. B–0015W, (D.Utah Nov. 26, 1984). Given the scholarly treatment of this issue by both of the Courts which have published opinions on the subject, and our complete agreement with the result reached in all three cases, any additional discussion of the matter by this Court would be superfluous.

■ We must next decide whether the Debtors' complaint constitutes a "core" or "related to" proceeding under 28 U.S.C. § 157(b). That section states that bankruptcy judges may hear and enter final judgments as to proceedings involving "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power ..." *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982). While Section 157(b)(2) sets forth a list of core proceedings, Congress intended that list to be representative, not all-inclusive. Among those listed are "orders to turn over property of the estate" and "other proceedings affect-

ing the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship..." 28 U.S.C. § 157(b)(2)(E) and (O). The words "to turn over property of the estate" are terms of art in the bankruptcy context, (cf. *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)) and their use by Congress evinces an intention to include all proceedings brought pursuant to 11 U.S.C. § 542 as core proceedings. Since Debtors' complaint seeks a turnover of money owed on a debt which is "matured, payable on demand, or payable on order" under § 542(b), it follows that their action constitutes a "core" proceeding.

An analysis of prior law supports our conclusion. While Congress did not revive the summary-plenary jurisdictional distinction which prevailed under the Bankruptcy Act of 1898, the flavor of that distinction certainly pervades the 1984 Amendments. The concepts employed in making that distinction are readily transferable to our analysis under § 157(b), and a review of the caselaw defining the parameters of summary jurisdiction adds weight to our interpretation of § 157(b)(2)(E). The law on this point is well summarized in *In re Perry, Adams and Lewis Securities,* 30 B.R. 845, 855 (Bankr.W.D.Mo.1983):

Section 542(b) of the Bankruptcy Code ... makes the matured rights of the estate to collect under a contract or on account a matter of summary turnover jurisdiction... This, by necessary implication, means that money or property which is the subject of the action to recover a matured right to payment under a contract is within the constructive possession of the bankruptcy court. For turnover jurisdiction has always been equated with the inherent summary jurisdiction to recover assets within actual or constructive possession of a bankruptcy court.

*See also, In re Wiltse Bros. Corp.,* 357 F.2d 190, 193 (6th Cir.1966); *In re Fidelity America Financial Corp.,* 20 B.R. 115, 117 (Bankr.E.D.Pa.1982).

■ Having determined that plaintiffs' complaint presents a "core" proceeding, we must next address Thompson's contention that this court is constitutionally prohibited from entering a final judgment on plaintiffs' claims. This argument was resoundingly rejected in *White Motor Corp. v. Citibank, N.A.*, 704 F.2d 254, 261 (6th Cir. 1983), wherein the constitutionality of the Emergency Rule was upheld. Since we view § 157 as essentially a Congressional enactment of the Emergency Rule, the holding of *White Motor Corp.* alone justifies this Court's rejection of Thompson's contention. *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 12 B.C.D. 536, 539 (C.D.Ca.1984).

■ While Thompson has not pressed the issue in his brief or at oral argument, his suggestion that this Court should abstain from hearing plaintiffs' complaint is unsupportable under either 28 U.S.C. § 1334(c)(1)[3] or the general doctrines of abstention applicable in federal courts. As noted above, the collection of a debtor's accounts receivable and other assets is a critical part of the administration of a bankruptcy estate traditionally pursued in the Bankruptcy Court. While state contract law may be applicable to the collection process, the process itself has its roots in the bankruptcy statutes. Plaintiffs' complaint poses no unsettled question of state law, and raises no issue of comity with the state courts. Under these circumstances, abstention is not only inadvisable, but inappropriate. *Crawley v. Hamilton County Commissioners,* 744 F.2d 28 (6th Cir.1984); *In re Tom Carter Enterprises, Inc.*, 44 B.R. 605, 12 B.C.D. 536, 539 (C.D. Ca.1984); *In re Lifeguard Industries, Inc.* 26 B.R. 858, 859–860 (Bankr.S.D.Ohio 1983).

■ Having concluded that this Court has the power to hear plaintiffs' complaint, and that we should exercise that power, we turn to defendant's counterclaims. To the extent that Thompson's jurisdictional contentions are directed to his counterclaims, we have great difficulty in taking them seriously. By filing counterclaims seeking affirmative relief, and then filing proofs of claim in these cases, Thompson unequivocally consented to this Court's jurisdiction. The doctrine of consent which prevailed under the 1898 Act has been codified by Congress in § 157(c)(2).[4] It may be fairly assumed that Congress intended that consent to the Bankruptcy Court's jurisdiction could be manifested in the same fashion as under the 1898 Act. Thus consent under § 157(c)(2) may be express; it may be implied from a timely failure to object to the Bankruptcy Court's jurisdiction; or it may be implied from any act which indicates a willingness to have the Bankruptcy Court determine a claim or interest. 2 *Collier on Bankruptcy,* ¶ 23.08 at 536 (14th ed. 1976).

By filing a proof of claim, a party indicates a willingness to have the Bankruptcy Court determine the validity and amount of that claim. *See, e.g., In re Marketing Resources International Corp.*, 43 B.R. 71, 72 (Bankr.E.D.Pa.1984); *In re Pat Freeman, Inc.*, 42 B.R. 224, 228 (Bankr.S.D. Ohio 1984). The same rule certainly applies where a defendant in an action filed by the debtor-in-possession asserts a counterclaim. As was noted in *In re Panama-Williams Corp.*, 235 F.Supp. 729, 733 (S.D. Texas 1964), "[i]n a summary proceeding a defendant who seeks affirmative relief by a cross-motion or other appropriate pleading consents to the court's summary jurisdiction." *See also, In re Perry, Adams and*

---

**3.** These bankruptcy cases were pending on July 10, 1984, and thus 28 U.S.C. § 1334(c)(2), which concerns mandatory abstention as to state law claims or causes of action, is inapplicable pursuant to § 122(b) of the 1984 Amendments. In light of our holding that plaintiffs' turnover action constitutes a "core" proceeding, § 1334(c)(2) appears to be inapplicable at any rate.

**4.** Section 157(c)(2) reads as follows:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

*Lewis Securities*, 30 B.R. 845, 855 n. 24 (Bankr.W.D.Mo.1983). To hold otherwise would be to permit a defendant to tinker with this Court's jurisdiction over a "core" proceeding through cleverly-drafted responsive pleadings.

■ Thus, regardless of whether they are termed "core" or "related to" proceedings [5], we conclude that Thompson has consented to having this court render a final judgment on his counterclaims as well as on the plaintiffs' claims.

■ Having cleared away the jurisdictional underbrush, we must next determine the fairest and most expeditious manner in which to proceed on the many and varied claims before us. Given the complexity of the issues raised by Thompson, as well as the protracted discovery and trial which those issues will inevitably generate, we find that the counterclaims should be severed for separate trials and judgments as provided for in Rules 13(i) and 42(b) of the Federal Rules of Civil Procedure. Plaintiffs' claims will be tried first, followed by a separate trial on Thompson's claims of wrongful termination and severance pay.[6]

■ At present, it is less than clear whether anything remains of Thompson's claim for indemnification for attorney fees and expenses. On August 31, 1984, U.S. District Judge David Porter ruled that the Debtors did not have authority under the Bankruptcy Code to advance legal fees to their former officers and directors for defense of the numerous actions brought against them. *In re Baldwin-United Corp.*, 43 B.R. 443 (S.D.Ohio 1984). While

this decision clearly forecloses *advancement* of legal expenses to Thompson, we do not read it as entirely foreclosing the possibility of full or partial indemnification for those expenses in the event final judgments are rendered in Thompson's favor.

■ The question of ultimate indemnification was not before the District Court, and it certainly is not ripe for adjudication in this Court. Under these circumstances, we find it appropriate to sever this counterclaim from the other claims and readdress the issue raised at a later time.

■ As for the setoff claims, we agree with the Debtors that such claims are unavailable to Thompson. It has long been the law that a stockholder who owes a debt to the corporation for unpaid stock may not set off a debt which the corporation owes him. Money due for unpaid stock constitutes a trust fund for the benefit of not merely the Debtor, but the Debtors' creditors as well. Because the Debtor may not use this fund solely to discharge any obligation it may have to Thompson, no mutuality of obligations exists, and thus no setoff may be claimed. The rule is at least as old as *Sawyer v. Hoag*, 84 U.S. 610 (17 Wall.), 21 L.Ed. 731 (1873), and remains the rule today. *See also, Kiskadden v. Steinle*, 203 F. 375 (6th Cir.1913); *In re Triple A Coal Co., Inc.*, 41 B.R. 641 (Bankr.S.D.Ohio 1984); 4 *Collier on Bankruptcy* ¶ 553.04 (15th ed. 1984).

This leaves us with Thompson's eighth affirmative defense, wherein he asserts that this Court is precluded from conduct-

**5.** Debtors argue that Thompson's counterclaims are permissive, and that since he has failed to allege an independent jurisdictional basis for asserting them in this Court, they should be dismissed. We agree that they are permissive counterclaims under either Bankruptcy Rule 7013 or Rule 13 of the Federal Rules of Civil Procedure. *Maddox v. Kentucky Finance Co.*, 736 F.2d 380 (6th Cir.1984). We further agree that Thompson's responsive pleading should have contained a statement of jurisdiction as required by Bankruptcy Rule 7008(a). However, no useful purpose would be served in dismissing on these technical grounds, since we are convinced that these counterclaims are sufficiently connected to the Debtors and their

affairs to bring them within the sweep of 28 U.S.C. § 1334(b) as "related to" proceedings. *Cf. In re Wesco Products Co.*, 19 B.R. 908 (Bankr.N.D.Ill.1982); *In re Brothers Coal Co., Inc.*, 6 B.R. 567 (Bankr.W.D.Va.1980).

**6.** Thompson's fourth counterclaim, alleging amounts due on a debenture issued by BU, appears to be moot in light of the settlement approved by this Court of debenture holders' claims in *First National Bank of Chicago, et al, v. Baldwin-United Corp., et al*, Adv.No. 1–83–0574. *See, In Re Baldwin-United Corp.*, 43 B.R. 888, 907 (Bankr.S.D.Ohio 1984).

ing a trial by jury. While most of Thompson's allegations are puzzling, we find this one to be particularly ironic. On the one hand, he has filed numerous claims which he could have brought elsewhere and has requested a trial by jury as to each, while on the other hand he asserts vigorously that this Court is powerless to hear his claims or conduct a jury trial.

■ At any rate, his assertion is legally defective. Nothing in the 1984 Amendments prohibits a Bankruptcy Court from conducting a jury trial. The only provision in the 1984 Amendments concerning jury trials appears in 28 U.S.C. § 1411, which preserves the right to trial by jury in personal injury or wrongful death claims. While it is subject to debate whether 28 U.S.C. § 1480 of the 1978 Code remains in effect, it is beyond question that Bankruptcy Rule 9015 was left untouched by Congress and is still viable. At least one Court has held that Rule 9015 effectively overruled the Emergency Rule's prohibition on jury trials in the Bankruptcy Courts. *In re River Transportation Co.*, 35 B.R. 556, 9 C.B.C.2d 986 (Bankr.M.D.Tenn.1983). Significantly, that prohibition was one of the few provisions of the Emergency Rule which Congress did not see fit to enact. Based upon our analysis of the 1984 Amendments as well as the holding in *Gibbons Construction Co., Inc. v. Tenneco, Inc.*, 46 B.R. 193, 12 B.C.D. 463 (E.D.Ky. 1984), we find that this Court is empowered to conduct a jury trial.

■ We must now determine whether Thompson has a right to a jury trial as to the plaintiffs' claims and each of his counterclaims. We agree with the plaintiffs that no such right exists as to their claims. A fair reading of *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) confirms our view. There, the Court held that matters which fall within the traditional summary jurisdiction of the Bankruptcy Court carry no right to a trial by jury. However outmoded the *Katchen*

doctrine may have been under the Bankruptcy Code of 1978 (*see,* 1 *Collier on Bankruptcy* ¶ 3.01[4] (15th ed. 1984)), the 1984 Amendments seem to breathe new life into that doctrine. Since Congress apparently intended "core" proceedings to include matters which were within the traditional summary jurisdiction of the Bankruptcy Courts under the 1898 Act, it follows under *Katchen* that a party has no constitutional right to a jury trial in "core" proceedings such as plaintiffs' turnover action. *Cf. In re McLouth Steel Corp.*, 38 B.R. 316 (Bankr.E.D.Mich.1984); *In re Lafayette Radio Electronics Corp.*, 7 B.R. 187 (Bankr.E.D.N.Y.1980).

■ Thompson's state law claims for wrongful termination and severance pay appear to be in the nature of "related to" rather than "core" proceedings. Obviously, their designation as such does not automatically entitle him to a jury trial. Both federal and Ohio courts, however, have traditionally recognized the right to a jury trial in cases involving a breach of an employment contract. *Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276, 281 (6th Cir. 1974), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974); *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 348 N.E.2d 144 (1976).

■ Having resolved the issues surrounding Thompson's counterclaims and setoffs, the question remains whether his designation of those claims as "affirmative defenses" may stand. We think not. Rule 8(c) of the Federal Rules of Civil Procedure provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Since the first four affirmative defenses set forth claims for affirmative relief rather than grounds for defeating the plaintiffs' claim, the Court will deem them solely as counterclaims and setoffs.[7] *Horsford v. Romeo*, 407 F.2d

---

7. Thompson's fifth affirmative defense states a defensive setoff, and thus is appropriately designated. Because of our holding that a setoff is

1302, 1303 (3rd Cir.1969); *Curtis Publishing Co. v. Church, Rickards & Co., Inc.*, 58 F.R.D. 594, 597–98 (E.D.Pa.1973); 2A *Moore's Federal Practice* ¶ 8.27[3] at 8–256 —8–258 (2d ed. 1984).

For all the reasons stated above, the Court hereby ORDERS as follows:

1. The Debtors' motion to dismiss or strike the Sixth, Seventh, Eighth and Ninth affirmative defenses is hereby GRANTED.

2. The Debtors' motion to dismiss or strike the First, Second, Third and Fourth claims of setoff, and the Fifth affirmative defense, is hereby GRANTED.

3. The Debtors' motion to dismiss or strike the First, Second and Third counterclaims is hereby DENIED.

4. The Debtor's motion to dismiss or strike the Fourth counterclaim is hereby GRANTED on the grounds of mootness.

IT IS SO ORDERED.

not available to Thompson, this claim of setoff    stands on no better footing than the others.