In re FRANKLIN COMPUTER CORPO-RATION (Jointly administered with Franklin Technologies, Inc.), Debtor.

FRANKLIN COMPUTER
CORPORATION,
Plaintiff,

v.

HARRY STRAUSS & SONS, INC.,[1]
Defendant.

Bankruptcy No. 84–02016G.
Adv. No. 84–0938G.

United States Bankruptcy Court,
E.D. Pennsylvania.

June 26, 1985.

Marvin Krasny, Adelman, Lavine, Krasny, Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, Franklin Computer Corp.

Douglas J. Smillie, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for the defendant, Harry Strauss & Sons.

Michael A. Bloom, Philadelphia, Pa., for Creditors' Committee.

OPINION

EMIL F. GOLDHABER, Chief Judge:

The threshold issue in the matter at hand, arising under a defendant's motion for abstention or, alternatively, for a change of venue, is whether a debtor's complaint to recover an account receivable is a core proceeding under 28 U.S.C. § 157(b). For the reasons espoused below,

1. The complaint identified the defendant as "Harry Strauss & Sons," but an affidavit by it reveals that the proper denomination is "Harry Strauss & Sons, Inc."

we conclude that the action is a core proceeding and we will deny the defendant's motion for abstention or a change of venue.

We outline the facts of this controversy as follows:[2] The debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") approximately one year ago. At some undisclosed time prior to the filing of the instant complaint, the defendant, Harry Strauss & Sons ("Strauss"), ordered merchandise worth $15,524.39 from the debtor. It is disputed whether Strauss undertook acts sufficient to effect "acceptance" of the goods under applicable commercial law and render it liable for payment.

The debtor filed the instant complaint to collect the $15,524.39 account receivable which is allegedly due from Strauss. Strauss filed a timely answer to the complaint and later filed the motion at issue for abstention or, in the alternative, for a transfer of venue to the bankruptcy court for the District of New Jersey. The parties have agreed to resolution of the motion without our convening an evidentiary hearing and without the submission of a stipulation of facts. We consequently have few undisputed facts on which to base our ruling. Nonetheless, we find that the debtor's principal place of business is in Pennsauken, New Jersey, which lies less than 10 miles from the court house in which the instant action is pending and that the underlying dispute is an action for collection of an account receivable which will be resolved under principles of state law, probably those of New Jersey.

As stated above, the threshold issue is whether a debtor's action in the bankruptcy court to collect an account receivable is a core proceeding, thus giving that court the power to enter a final order disposing of the matter. A resolution of this question requires a review of the history of the jurisdiction of the bankruptcy court on these matters since the passage of the

Bankruptcy Reform Act of 1978 ("the 1978 Act").

With the passage of the 1978 Act, Congress vested the district courts with "original and exclusive jurisdiction of all cases *under* title 11." 28 U.S.C. § 1471 (repealed) (emphasis added). The district court also had "original but not exclusive jurisdiction of all civil proceedings *arising under* title 11 or *arising in* or *related to* cases under title 11". § 1471(b) (repealed) (emphasis added). The "bankruptcy court for the district in which a case under title 11 [was] commenced [exercised] all of the jurisdiction conferred by [§ 1471] on the district courts." § 1471(c) (repealed). Thus, all jurisdiction under these provisions was effectively lodged in the bankruptcy court. The legislative history of the 1978 Act summarized the scope of the power available to the bankruptcy judge under that Act:

§ 1471. Jurisdiction.

Subsection (a) of this section gives the proposed bankruptcy courts original and exclusive jurisdiction of all cases under title 11. The jurisdiction granted under this provision is of the whole bankruptcy case. Subsection (b) governs jurisdiction of proceedings in the case. This subsection dictates that all bankruptcy cases are commenced in the United States bankruptcy courts.

Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts. The idea of possession or consent as the sole bases for jurisdiction

---

**2.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy

Rule 7052 (effective August 1, 1983).

is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

The jurisdiction granted is of all proceedings arising under title 11 or arising under or related to a case under title 11. The bill uses the term "proceeding" instead of the current "matters and proceedings" found in the Bankruptcy Act and Rules. The change is intended to conform the terminology of title 28, under which anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

The use of the term "proceeding," though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy courts will be able to hear these proceedings because they arise under title 11.

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because

the trustee would be claiming based on a right given by one of the sections in sub-chapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way "related to" a case under title 11. In sum, the combination of the three bases for jurisdiction, "arising under title 11," "arising under a case under title 11," and "related to a case under title 11," will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445–46 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6400–01.

Prior to the passage of the 1978 Act, Congress voiced concern that the breadth of the jurisdiction accorded the bankruptcy court under proposed § 1471 would run afoul of constitutional prohibitions. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 2866 n. 12, 73 L.Ed.2d 598 (1982). Congressional anxiety over the matter was ultimately justified by the Supreme Court's decision in *Marathon.* In that case a debtor that filed for reorganization commenced suit in bankruptcy court against a defendant "for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion, and duress." *Marathon*, 458 U.S. at 56, 102 S.Ct. at 2863. The bankruptcy court denied the defendant's motion to dismiss but the district court reversed. On appeal the Supreme Court held that the bankruptcy court could not constitutionally adjudicate the debtor's state law claims because the jurisdiction given to the bankruptcy courts under § 1471 was too broad since the bankruptcy judges, being Article I[3] judges, lack the

---

**3.** Article I judges are those whose offices are created through power ascribed to Congress in Article I § 8 of the U.S. Constitution which authorizes Congress "to constitute tribunals in-

ferior to the Supreme Court." These courts are commonly referred to as "legislative courts" as opposed to Article III courts which derive their powers from Article III which states:

protections of life tenure and unreducable compensation which guarantees inhere to the offices of Article III judges. The Supreme Court held that § 1471 "has impermissibly removed most, if not all, of 'the essential attributes of judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct." *Marathon*, 458 U.S. at 87, 102 S.Ct. at 2880. The decision was predicated on the doctrine of separation of powers among the three branches of the federal government. The Supreme Court feared that the Article I bankruptcy judges, having been given virtually co-extensive jurisdiction with the district courts in all matters related to a pending bankruptcy case, would be subject to excessive political pressure from the legislative and executive branches of government, to the derogation of the Article III judges, since bankruptcy judges do not have the tenure and salary guarantees of Article III judges. *Marathon*, 458 U.S. at 83, 102 S.Ct. at 2877. *Marathon did not* hold that Article I bankruptcy judges could not constitutionally adjudicate state law claims *although* the question of the resolution of state created rights in bankruptcy court presented the Supreme Court with

the factual vehicle for declaring the unconstitutionality of § 1471 in *Marathon*. "[I]t is clear that under the actual holding in *Marathon*, the constitutional ability of an adjunct court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate." *Lesser v. A–Z Assoc. (In Re Lion Capital Group)*, 46 B.R. 850, 856. (Bankr.S.D.N.Y.1985). Thus, an Article I bankruptcy judge cannot constitutionally adjudicate state created rights when its jurisdiction is virtually co-extensive with that of the district court, but such constitutional infirmity vanishes when the jurisdiction of the bankruptcy judge has been rendered sufficiently inferior to that of the district court by an act of Congress. After such Congressional action the bankruptcy court could resolve questions of state created rights. Any other resolution of the quandary would be impractical and therefore at odds with the power embodied in the Bankruptcy Clause [4] of the Constitution since virtually every bankruptcy case entails the alteration or nullification of some state created rights.[5]

ARTICLE III

Section 1. The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and·establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office.

*See also, Marathon*, 458 U.S. at 70, 102 S.Ct. at 2871.

4. The Bankruptcy Clause provides that, "The Congress shall have the power ... to establish uniform laws on the subject of bankruptcies throughout the United States."

5. [T]he distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings. The routine in ordinary bankruptcy cases now, as it was before 1978, is to stay actions against the bankrupt, collect the bankrupt's assets, require creditors to file claims or be forever barred, allow or disallow claims that are filed, adjudicate preferences and fraudulent transfers, and make pro rata distri-

butions to creditors, who will be barred by the discharge from taking further actions against the bankrupt. The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy—claims for goods sold, wages, rent, utilities and the like. "[T]he word debt as used by the Act is not confined to the technical common law meaning but ... extends to liabilities arising out of breach of contract ... to torts ... and to taxes owing to the United States or state or local governments." 1 Collier on Bankruptcy 88 (14th ed. 1976). Every such claim must be filed and its validity is subject to adjudication by the bankruptcy court. *The existence and validity of such claims recurringly depends on state law. Hence, the bankruptcy law is constantly enmeshed in state law issues.*

The new aspect of the Bankruptcy Act of 1978, in this regard, therefore, is not the extension of federal jurisdiction to state law claims, but its extension to particular kinds of state law claims, such as contract cases against third parties or disputes involving property in the possession of a third party. *Marathon*, 458 U.S. at 96, 102 S.Ct. at 2884 (White, J., dissenting) (emphasis added).

For instance, the entry of a discharge of debts, which is typically perceived as the *sine qua non* of bankruptcy, creditors' dischargeable claims are extinguished even though they may arise through, or as, state created rights. The resolution of objections to proofs of claim likewise necessitate an adjudication of state created rights, as do many other disputes in bankruptcy.

In *Marathon* the Supreme Court ordered that its ruling apply prospectively and stayed its effective date for several months. After the last of various extensions of the stay of that ruling expired, the district courts across the country adopted, with occasional modifications, an emergency rule that was suggested by the Judicial Conference. This rule gave the bankruptcy judges ostensible authority to continue hearing bankruptcy matters. One and one-half years later Congress, realizing, *inter alia,* that bankruptcy courts must be accorded the power to adjudicate certain disputes arising under state law, passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act"). Pub.L. 98–353, 98 Stat. 333 (1984).

The jurisdictional provisions of this act are applicable to cases which were pending on the date of the passage of the statute or were filed thereafter and, consequently, they govern the disposition of the instant matter. Pub.L. 98–353, § 122(a), 98 Stat. 333, 346 (1984) The 1984 Act amended or added several provisions of title 28 of the United States Code to grant the bankruptcy court jurisdiction, among which are 28 U.S.C. §§ 157 and 1334.

Under 28 U.S.C. § 1334 the United States District Courts have exclusive and original jurisdiction of all cases under title 11 of the United States Code. Ostensibly, a bankruptcy petition may only be filed in federal district court. That court would likewise have exclusive jurisdiction over all actions necessarily related to the administration of the bankruptcy case. § 157(b)(2)(A). The district courts are also given original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. The grant of jurisdiction extends over all property, wherever located, of the debtors as of the commencement of the case, and of the estate. 28 U.S.C. § 1334(d). On matters not inherently germane to the administration of the bankruptcy the district court may abstain on motion of a party if the cause of action under litigation is based on a state law claim or state law cause of action, if an action is commenced and can be timely adjudicated in an appropriate state court forum. This provision is known as the "mandatory abstention provision." 28 U.S.C. § 157(b)(4). Section 1334(c)(2) of title 28 of the United States Code also provides that a decision made under the mandatory abstention provision "is not reviewable by appeal or otherwise."

Under 28 U.S.C. § 157 each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 shall be referred to the bankruptcy judges for that district. By local rule our district court has done so, as have apparently all other district courts in the country. Through § 157(b)(1) the bankruptcy judge may hear and enter final orders on all core proceedings arising under title 11. Under § 157(c)(1) a bankruptcy judge may hear noncore matters that are related to a case under title 11 but, absent consent[6] of all parties to the dispute, he may not enter final orders in those disputes but must rather submit proposed findings of fact and conclusions of law to the district court for entry of final orders. Section 157(b)(2)[7] provides a nonexhaustive

---

6. In a noncore matter the bankruptcy judge may enter final orders when the parties to the dispute have consented. § 157(c)(2). The consent may be entered in the district court or the bankruptcy court. § 157(c)(2); *K–Rom Construction Corp. v. Behling* (In Re K–Rom Construction Corp.), 46 B.R. 745, 748, 12 B.C.D. 909, 912 (Bankr.S.D.N.Y.1985).

7. § 157 Procedures
   (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

list of core proceedings the more important of which are 1) all matters concerning the administration of the bankruptcy estate, 2) counterclaims against the estate by persons or entities filing claims against the estate, 3) proceedings for turnover of property of the estate and 4) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity holder relationship. § 157(b)(2)(A), (C), (E) and (O). Notwithstanding other provisions of § 157(b), personal injury torts and wrongful death claims may not be heard by a bankruptcy court but must be resolved by the district court or a state court. § 157(b)(5).

When an entity files for relief under the Bankruptcy Code the debtor in possession or the trustee is required to collect property of the estate for the purpose of liquidation and distribution of this property to creditors or for the funding of a debt repayment plan. When the debtor has been in business a substantial portion of its assets are in the form of accounts receivable. The prompt collection of these assets is often essential to the administration of the bankruptcy or reorganization process since the funds represented by the accounts are typically needed to meet the estate's expenses in advancing the administration of the case. As stated above, § 157(b)(2)(A) provides that core proceedings include, but are not limited to "matters concerning the administration of the estate." Since the rapid resolution of this type of litigation is often essential to the sound administration of the estate, § 157(b)(2)(A) weighs in favor of finding that questions on accounts receivable are core matters. *Baldwin United Corp. v. Thompson* (In Re Baldwin United Corp.) 48 B.R. 49 (Bankr.S.D.Ohio 1985).

Under § 157(b)(2)(E) core matters also embrace proceedings "to turn over property of the estate." The bankruptcy judge clearly may enter a final order directing the surrender of tangible estate property when it is in the possession of an entity other than the debtor or the trustee. Such an action is akin to the collection of money notwithstanding its liquid, fungible nature and the courts have so held. *Baldwin*, 48 B.R. 49; *See also, Clay v. Perry* (In Re Perry, Adams and Lewis Securities, Inc.), 30 B.R. 845, 855 (Bankr.W.D.Miss.1983). *In Re Wiltse Bros. Corp.*, 357 F.2d 190, 193 (6th Cir.1966); *In Re Fidelity America Financial Corp.*, 20 B.R. 115, 117 (Bankr. E.D.Pa.1982).

Section 157(b)(2)(O) allows the bankruptcy judge to enter final orders on "proceed-

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determination of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

ings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship...." This provision likewise supports a finding that an action on an account receivable is a core proceeding. *Baldwin,* 48 B.R. at 54.

■ Lastly on this point, although litigation to collect accounts receivable typically requires the application of state law, the issues generally are straight forward and merely require the utilization of well accepted principles of law. Questions arising under accounts receivable litigation are frequently nothing more than a determination of whether goods received under a contract are conforming, whether a simple contract has been breached and the arithmetic calculation of resulting damages. It is a rare case when we are presented with novel, unsettled issues of state law which could possibly infringe on the comity between this federal court and the prerogatives of a state court having concurrent jurisdiction. Even less frequently are we faced with disputes which would call into play the protections of life tenure and undiminishable compensation which, in part, distinguish bankruptcy judges from Article III judges, such distinctions being the ostensible bases of the decision in *Marathon.* Inquiries into the realm of constitutionality, political questions, national security, foreign sovereignty the federal debt or government-wide policy are not the grist of accounts receivable litigation. The tripartite division of government envisioned and developed by the founding fathers of this republic is safe from erosion when bankruptcy judges are adjudicating complaints on accounts receivable. The American icons of Mom, apple pie and the flag are not in jeopardy because bankruptcy judges may enter final orders on disputes of accounts receivable financing. Quite simply we hold that disputes on accounts receivable are core matters within the meaning of § 157(b) thus allowing bankruptcy judges to enter final orders thereon. *Lesser,* 46 B.R. 850 (core); *Appel v. Mainstar Oil Co.* (In Re B & L Oil Co.) 46 B.R. 731, 12 B.C.D. 865 (Bankr. D.Colo.1985) (action for turnover of money was a core matter); *Baldwin,* 48 B.R. 49 (core matter where debtor filed turnover action to collect on installment loan); contra, *Cristol v. Western Book Dist.* (In Re Schear & Assoc. Inc.) 47 B.R. 544 (Bankr.S. D.Fla.1985) (accounts receivable not a core matter). We will accordingly deny Strauss's motion for abstention.[8]

■ Lastly, we must also adjudicate Strauss's motion for a change of venue. As stated above, there was no evidentiary hearing or stipulation of undisputed facts. In the absence of countervailing policy, rule or statute, none of which has been cited to us, Strauss, as the moving party, bears the burden of proving his case for a change of venue. *Kane v. Clark Equipment Credit Corp.* (In Re Kane), 27 B.R. 902, 904 (Bankr.M.D.Pa.1983); *Arthur v. Unkart* 96 U.S. (6 Otto) 118, 122, 24 L.Ed. 768 (1877); *U.S. National Starch Products, Inc.* 318 F.2d 737, 740, 50 CCPA 1 (Cust. & Pat.App.1962); *Hervitz v. New York Life Ins. Co.,* 160 Pa.Super. 496, 499, 52 A.2d 368 (1947). This burden of the risk of nonpersuasion means that any contested averments must be resolved against Strauss. As noted previously, the basis for the change of venue is that this court sits in Philadelphia, Pennsylvania, at a distance of less than ten miles from the debtor's principal place of business in Pennsauken, New Jersey, and that the resolution of this

---

**8.** On a dispute brought before us we may abstain under 28 U.S.C. 1334(c)(1) which states as follows:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

It appears that we could abstain from hearing a controversy in accordance with this provision even though the dispute is a core proceeding. However, we hold that a finding that a matter is a core proceeding weighs heavily in favor of a denial of abstention, particularly in light of the facts in this case.

matter will probably require the application of New Jersey law.

Although venue for the instant complaint properly lies in this district under 28 U.S.C. § 1409(a) due to the filing of the reorganization petition here, venue may be changed under 28 U.S.C. § 1412 which provides that: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties." Our findings of fact do not support such a change and therefore we will enter an order denying the alternative motion for a change of venue.