In re James B. BLACKMAN, Celia Ann Blackman, and J and B Construction, Debtors.

James B. BLACKMAN, et al., Plaintiffs,

v.

Max SETON, et al., Defendants.

Bankruptcy No. 84–00357.
Adv. P. No. 84–0205.

United States Bankruptcy Court,
District of Columbia.

Sept. 30, 1985.

Lois F. Lapidus, Lapidus & Lapidus, Pikesville, Md., Alan C. Drew, Upper Marlboro, Md., for plaintiffs.

Douglas L. Lashley, Bethesda, Md., for defendants.

## OPINION AND ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

The plaintiffs in this adversary proceeding, who are debtors in the related bankruptcy case, seek to have this adversary proceeding, which they brought in Bankruptcy Court, heard in the United States District Court for this District. Unfortunately, their motion, though unopposed, must be denied because they have requested the wrong relief from the wrong judge for the wrong reason. The relevant statutory provisions under the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments"), P.L. 98–353, 98 Stat. 333, are new and are rather complex and obscure. Therefore, this Court will explain its reasoning in some detail.

■ Plaintiffs' motion is denominated a "Motion To Remand Adversary Proceeding To District Court For Order Directing Jury Trial" (filed September 13, 1984). However, this adversary proceeding cannot be "remanded" to the District Court because it was originally filed in this Court and has never at any time been pending before the District Court—except in the limited sense that all bankruptcy cases and proceedings that are before this Court are automatically pending in the District Court through legislative legerdemain, because, according to Congress, this Court is a Judge who constitutes a "unit" of the District Court "known as" the Bankruptcy Court. 28

U.S.C. § 151. All bankruptcy cases and proceedings have been "referred" to the undersigned "unit" by an order of the District Court pursuant to Title 28 U.S.C. § 157(a). In that limited sense this proceeding is already pending and has always been pending before the District Court and hence cannot be remanded there. In other words, either this adversary proceeding has never been pending before the District Court or else it is now and always has been pending before the District Court; in either event, a "remand" to the District Court is logically impossible.

Rather than seeking a "remand" the plaintiffs should ask that the reference of this adversary proceeding from the District Court to this Court be withdrawn, under Title 28 U.S.C. § 157(d). A motion to withdraw the reference should be filed in the Bankruptcy Court Clerk's Office, and it will then be referred by the Clerk of the Bankruptcy Court to the Civil Division of the District Court, for consideration by a United States District Judge, rather than by the undersigned Bankruptcy Judge.

## I

The reason advanced by the plaintiffs for requesting that this adversary proceeding be heard in the District Court rather than this Court is that they have demanded a jury trial. However, the new statute contains no provision similar to that in the former District Court Local Interim Rule which prohibited bankruptcy judges from conducting jury trials. See ¶ d(1)(D), Local Interim Rule (adopted December 22, 1982); see also Smith-Douglass, Inc. v. Smith, 43 B.R. 616, 12 B.C.D. 426, 427 (Bankr.E.D.N.C.1984). Instead, the new statute specifi-

cally adverts to the right to trial by jury without in any way indicating that the bankruptcy court unit of the district court is prohibited from conducting jury trials. 28 U.S.C. § 1411.[1]

Even while the Local Interim Rule was in effect, several courts held that its jury trial prohibition was invalid as contrary to the Bankruptcy Rules. See In re Martin Baker Well Drilling, Inc., 36 B.R. 154, 10 B.C.D. 375 (Bankr.D.Me.1984); In re O.P.M. Leasing Servs., Inc., 35 B.R. 854, 11 B.C.D. 821 (Bankr.S.D.N.Y.1983); In re River Transp. Co., 35 B.R. 556, 9 B.C.D. 986 (Bankr.M.D.Tenn.1983); but see In re Proehl, 36 B.R. 86, 12 B.C.D. 321 (W.D.Va. 1984); In re Hoffman, 33 B.R. 937 (Bankr. W.D.Okla.1983). Those Rules were proposed by the Supreme Court and adopted without relevant modification by Congress, subsequent to the District Court's original adoption of our Local Interim Rule. 103 S.Ct. [No. 14] (May 15, 1983) (Bankruptcy Rules effective August 1, 1983). The Bankruptcy Rules expressly vest power to conduct jury trials in the bankruptcy court. See Bankruptcy Rule 9015 ("Jury Trial"); see also Bankruptcy Rules 9020(b) and 9027(i). The conflict between the Local Interim Rule, otherwise known as the "Emergency Rule," and the newly promulgated Bankruptcy Rules has been recognized and dealt with by the judiciary.

In In re Morrissey, 717 F.2d 100 (3d Cir.1983), a provision of the local model rule regarding the standard of review of bankruptcy decisions on appeal conflicted with the standard set forth by the new Bankruptcy Rules. The Court of Appeals for the Third Circuit held that, for two

---

**1.** In In re Baldwin-United Corporation, Bankruptcy Judge Newsome has recently noted that "[n]othing in the 1984 Amendments prohibits a Bankruptcy Court from conducting a jury trial." 48 B.R. 49, 12 B.C.D. 913, 917 (Bankr.S.D.Ohio 1985). It is indisputable that even prior to the 1984 Amendments, the Bankruptcy Reform Act of 1978 countenanced jury trials in the bankruptcy court. See 28 U.S.C. § 1480. Even earlier, when the Bankruptcy Act was effective, the bankruptcy laws provided for jury trials. 11 U.S.C. § 42 (1970) (repealed 1978).

The Court recognizes that Title 28 U.S.C. § 1411 applies to proceedings such as this, which were begun subsequent to the date of the enactment (July 10, 1984) of the Bankruptcy Amendments and Federal Judgeship Act of 1984. P.L. 98–353, July 10, 1984, 98 Stat. 333; Title I, Section 122(b). The Court, however, is not at this time required to and chooses not to determine whether the plaintiffs are in fact entitled to a jury trial. See infra notes 4 and 5.

reasons, the Bankruptcy Rules must prevail over the local rule:

First, a statute vests the exclusive power for promulgating rules of bankruptcy in the Supreme Court and the Congress of the United States, 28 U.S.C. § 2075, and not in the United States district courts.... Further, although the new rules quite properly allow each local court to adopt any local rules of practice and procedure it desires, such local rules are clearly subordinate to, and may not be inconsistent with, the national rules. Bankruptcy Rule 9020. Thus, neither the Judicial Conference nor the several district courts of the United States have the authority to propose and enact local bankruptcy rules that conflict with the new bankruptcy rules.

717 F.2d at 104. *Accord In re AOV Industries, Inc.*, 43 B.R. 468, 472 (D.D.C.1984) ("Bankruptcy Rule 8013 ... prevails over Interim Rule (e)" as to the approriate standard of appellate review of bankruptcy decisions). The court concluded that "any local rule governing *procedure,* as distinguished from *jurisdiction,* in bankruptcy cases must yield to the bankruptcy rules duly promulgated under the Supreme Court's statutory authority." 717 F.2d at 105 (emphasis in original). Hence, one must conclude that, absent any jurisdictional impediment, current Bankruptcy Rule 9015, which was promulgated by the Supreme Court and which permits jury trials in bankruptcy court, superceded our district's Local Interim Rule ¶ d(1)(D) that prohibited jury trials in bankruptcy court. *See also Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 12 B.C.D. 1284, 1286 (M.D.Ga.1985).

■ Those courts that have directly and in detail addressed the constitutionality of the bankruptcy court's power to conduct a jury trial generally have concluded that such power is neither contrary to the Supreme Court's *Northern Pipeline* ("Marathon") decision[2] which struck down the broad grant of jurisdiction to the bankruptcy courts contained in the Bankruptcy Reform Act of 1978, nor contrary to the provisions of Article III of the Constitution. Nothing in the Constitution forbids an Article I federal judicial officer, 28 U.S.C. § 151, otherwise constitutionally empowered to act, from conducting a jury trial. *See Pernell v. Southall Realty Co.*, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974); *Fields v. W.M.A.T.A.*, 743 F.2d 890 (D.C.Cir.1984).

In *Lombard-Wall, Inc. v. N.Y. City Housing Development Corp.*, 44 B.R. 928 (S.D.N.Y.1984), the District Court stated:

We note first that the parties have proceeded to this point under the mistaken assumption that a jury trial is unavailable in the bankruptcy court. They have apparently overlooked Rule 9015 of the Rules of Bankruptcy Procedure ... which permits the bankruptcy courts to hold jury trials. The advisory committee notes to Rule 9015 confirm this interpretation. The notes speak of 'the procedures for requesting trial by jury in a matter [before the] ... bankruptcy court.'

In *In re River Transportation Company,* Bankruptcy Judge Paine notes that Bankruptcy Rule 9015, which allows a bankruptcy court to hold a jury trial, does not "offend the principles set forth in *Northern Pipeline,*" and nowhere in that decision "does the [Supreme] Court state that allowing an Article I court to conduct a jury trial is violative of the provisions of Article III of the Constitution." 35 B.R. at 560; *but see Proehl,* 36 B.R. at 87–88, 12 B.C.D. at 322; *Hoffman,* 33 B.R. at 941–42.

■ If, because the Bankruptcy Rules contemplate it, bankruptcy courts could conduct jury trials even in the face of a local Emergency Rule prohibiting it, *a fortiori* they can conduct jury trials after the contrary local rule no longer exists and is superseded by a statute which, unlike the local rule, also may contemplate that bank-

---

**2.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

ruptcy courts can conduct jury trials. *Lombard-Wall, Inc. v. N.Y. City Housing Development Corp.*, 44 B.R. 928 (S.D.N.Y. 1984). In addition, the court in *Baldwin-United* notes:

> Significantly, that [Emergency Rule] prohibition [on jury trials] was one of the few provisions of the Emergency Rule which Congress did not see fit to enact.

48 B.R. 49, 12 B.C.D. 913, 917 (Bankr.S.D. Ohio 1985); *accord In re Rodgers & Sons, Inc.*, 48 B.R. 683, 12 B.C.D. 1255, 1257 (Bankr.E.D.Okla.1985). Therefore, this Court concludes that the fact that a demand for a jury trial has been made is not, standing alone, a proper basis for withdrawal of the reference. *Accord Gibbons Construction, Inc.*, 46 B.R. 193, 12 B.C.D. 463 (E.D.Ky.1984). However, that decision will be one to be made not by this Court but by the District Court, if the plaintiffs or the defendants timely file a motion to withdraw the reference.

## II

The conclusion that this Court can conduct jury trials does not end this Court's inquiry. If this adversary proceeding is a "core proceeding," then I as a Bankruptcy Judge may "hear and determine" it. 28 U.S.C. § 157(b)(1). If the proceeding is not a core proceeding but "is otherwise related to a [bankruptcy] case," then, unless all parties to the proceeding consent to have me hear and determine it as provided in Title 28 U.S.C. § 157(c)(2), I can hear it but must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge ... after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). This cumbersome and time-consuming procedure is obviously impractical for jury trials.[3] As aptly stated by the *Smith-Douglass* court:

> ... [t]he inability of bankruptcy judges to enter final judgments, absent consent of the parties, in noncore proceedings makes jury trials in such proceedings impractical. A party entitled to a jury trial should receive one, not an advisory jury trial in which proposed findings are submitted to the district court.

43 B.R. 616, 12 B.C.D. at 427.

■ Notwithstanding the availability of Federal Rule of Civil Procedure 49, made applicable by Bankruptcy Rule 9015(f) "when a jury trial is conducted" in bankruptcy court, findings of fact and conclusions of law are normally made only in non-jury trials. Thus, for non-core proceedings, considerations of judicial economy and efficiency would normally call for withdrawal of the reference so that a jury trial can be held in district court. *Accord Macon*, 46 B.R. 727, 12 B.C.D. at 1286; *Smith-Douglass*, 43 B.R. 616, 12 B.C.D. at 427; *but cf. In re Best Pack Seafood, Inc.*, 45 B.R. 194 (Bankr.D.Me.1984) (considerations of economy and efficiency dictate that core proceedings be heard without a jury). Under Title 28 U.S.C. § 157(b)(3), it is the bankruptcy judge's responsibility to "determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding." Therefore, if it is clear to me (1) that this proceeding is not a core proceeding, (2) that the jury demand is proper, and (3) that the parties have not consented to my conducting a jury trial, then, pursuant to my statutory responsibility under subsection 157(b)(3), I should *sua sponte* request the District Court to withdraw the reference. *Cf. Smith-Douglass*, 43 B.R. 616, 12 B.C.D. 426.

---

**3.** In *In re Best Pack Seafood, Inc.*, 45 B.R. 194, 195 (Bankr.D.Me.1984), the court held:

> The added delay and expense of trial by jury of these core proceedings would frustrate the expeditious and effective administration of bankruptcy cases. Congress may accommodate the right to trial by jury to the need for expeditious proceedings.

If this Court were to adopt the reasoning used by the *Best Pack Seafood* court, it would be difficult to conceive circumstances under which a jury trial should be granted in the bankruptcy courts.

According to Title 28 U.S.C. § 157(b)(2), "[c]ore proceedings include but are not limited to—... (B) allowance or disallowance of claims against the estate ...; (C) counterclaims by the estate against persons filing claims against the estate; ... (E) orders to turn over property of the estate; ... (K) determination of the validity, extent, or priority of liens; ... and (O) other proceedings affecting ... the adjustment of the debtor-creditor ... relationship, except personal injury or wrongful death claims."

In this proceeding the plaintiffs' First Amended Complaint is entitled a complaint "to recover money and property and determine extent and validity of lien." Count I claims violations of the District of Columbia Usury and Consumer Protection Procedures statutes. *See* D.C.Code Ann. § 28–3901 *et seq.* (1981). Count II claims violations of the Federal Truth In Lending Act. *See* 15 U.S.C. § 1601 *et seq.* (1968). The relief sought under each count includes "a release of Defendants' security interest in Plaintiffs' residence and a rescission of the loan transaction ...," a partial release of the plaintiffs' liability to the defendants, money damages (including punitive damages), and attorney fees.

 Insofar as the plaintiffs seek a determination of the validity and extent of the defendants' lien, and insofar as they seek an order "to turn over property of the estate" in the form of a release and a rescission of the defendants' security interest, it is obvious that this proceeding fits squarely within the definitions of a core proceeding provided by Title 28 U.S.C. § 157(b)(2)(E) and (K). Insofar as the plaintiffs seek a partial release of their liability to the defendants, this proceeding can be construed to address the "disallowance of [the defendants'] claims against the estate" within the meaning of subsection 157(b)(2)(B). Plaintiffs' request for attorney fees is based on provisions for fee-shifting contained in the statutes on which they are suing, and therefore that request partakes of the same "core" nature as the underlying "core" claims. However, inso-

far as the plaintiffs seek money damages against defendants other than Seton Investments, it seems to this Court questionable whether that portion of this proceeding should be viewed as "core." Subsection 157(b)(2)(C), relating to "counterclaims ... against persons filing claims," is available as a basis for "core" jurisdiction as against Seton Investments but not as against the other defendants that have not filed claims against plaintiffs, except perhaps to whatever extent plaintiffs can show that Seton Investments is an alter ego of some other defendant(s). It is arguable that the catch-all provision of subsection 157(b)(2)(0)—"other proceedings affecting ... the adjustment of the debtor-creditor ... relationship"—is sufficiently broad to encompass debtors' claims for money damages against these other defendants; but I am not at this time fully persuaded. However, it is not necessary for me to decide that issue now. For I believe that, when a proceeding is in part a core proceeding and in part non-core, the courts may determine that the entire proceeding is core if the core aspect heavily predominates and the non-core aspect is insignificant.

 In this proceeding, the plaintiffs' major underlying purpose is no doubt to save their home, which they have valued in their Chapter 13 Statement at $75,000, from foreclosure by the defendants. They seek release of the defendants' security interest, amounting to over $35,000, rescission of the loan transaction with the defendants, and release of all but $17,260.50 of their liability to the defendants. These claims far outweigh and predominate over their claim for money damages. Plaintiffs have failed to specify any way in which they have suffered any actual damages that will not be fully cured by their claims for rescission and release. Moreover, their claim for those unspecified actual damages, before trebling, amounts to only $5,000. Therefore, I conclude that the core aspects of this proceeding heavily predominate over any non-core aspect, and any non-core aspect is insignificant. Hence,

this proceeding should be regarded as a core proceeding. See *In re Salem Mortgage Co.*, 50 B.R. 34 (Bankr.E.D.Mich. 1985), holding that complaints against a mortgage broker/debtor, alleging violations of the federal Truth in Lending Act and the state usury law, gave rise to core proceedings under 28 U.S.C. § 157(b)(2)(0).

■ The determination that this is a core proceeding makes it unnecessary for me to determine at this time whether the jury demand should be granted.[4] I note, however, that that issue has been addressed in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 224–26 and 228–29 (4th Cir.1978), in which the court held (without dissent on that issue) that a jury demand was proper in a Federal Truth in Lending Act case involving no actual but only statutory punitive damages.[5]

Nor, in view of my conclusion that this is a core proceeding, do I need to address whether the parties have consented to my hearing and determining this proceeding, within the meaning of Title 28 U.S.C. § 157(c)(2). The need for consent arises only in non-core proceedings. I do observe, however, that (as explained below) the plaintiffs could have brought their claims in either the United States District Court or the District of Columbia Superior Court. Having chosen this forum, the plaintiffs could well be deemed to have consented to this forum for purposes of subsection 157(c)(2).[6]

## III

The question arises whether my interpretation of the core/non-core statutory dichotomy comports with the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), i.e., whether the statute as so construed is constitutional. *Marathon* was an adversary proceeding brought by a chapter 11 debtor-in-possession, Northern, against Marathon, involving claims (for damages from alleged breaches of contract and warranty, misrepresentation, coercion and duress) arising entirely under state law. Marathon had no other connection to the bankruptcy case.

■ Here, one of the plaintiffs' two counts arises under the District of Columbia Consumer Protection Procedures Act, a local enactment. See D.C.Code Ann. § 28–3901 *et seq.* (1981). That Act is not an enactment by the legislature of one of the fifty sovereign states of this nation. Rather, it was enacted by the District of Columbia City Council, a creature of Congress whose enactments are subjected to congressional review. The plurality opinion in *Marathon* specifically notes that "Congress' power over the District of Columbia

---

**4.** In addition, the question, "When is a party entitled to a jury trial as of right?", does not arise when a jury demand is made and no objection is raised by another party or by the court. 5 J. Moore, J. Lucas & J. Wicker, Moore's Federal Practice ¶ 38.11[1] (2d ed. 1982). In those situations, "the issues claimed for jury trial are properly so tried, even though there may have been no constitutional or statutory right of jury trial." *Id.*

**5.** However, in *Katchen v. Landy*, 382 U.S. 323, 338–40, 86 S.Ct. 467, 478, 15 L.Ed.2d 391, 402–03 (1965), the Supreme Court held that the "delay and expense" of conducting a jury trial in another, non-bankruptcy court "is not consistent with the equitable purposes of the Bankruptcy Act ..." The Court thus distinguished its earlier *Beacon Theatres v. Westover* case, in which it had held that "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of the legal issues be lost through prior determination of equitable claims." 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988, 997–98 (1958). The Court stated in *Katchen v. Landy:* "In neither *Beacon Theatres* nor *Dairy Queen* [*v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) ] was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim without the intervention of a jury." *See also* Annot., "Supreme Court's Construction of Seventh Amendment Guaranty of Right to Trial by Jury," 40 L.Ed.2d 846, 867 (1974).

**6.** The defendant Seton Investments may also be deemed to have consented to this Court's jurisdiction by filing a proof of claim in this case. *Accord In re Baldwin-United Corporation*, 48 B.R. 49, 12 B.C.D. 913, 916 (Bankr.S.D.Ohio 1985); and see 28 U.S.C. § 157(b)(2)(C).

encompasses the *full* authority of government, and thus, necessarily, the executive and judicial powers as well as the legislative." 458 U.S. at 76, 102 S.Ct. at 2874, 73 L.Ed.2d 618; (emphasis in original). Therefore, in view of the congressional nexus, it is highly questionable whether the plaintiffs' action brought under the District of Columbia Consumer Protection Procedures Act may accurately be classified as a "state law" claim. The gist of the Supreme Court's holding was that non-Article III bankruptcy judges may exercise broad judicial powers in the adjudication of rights created by Congress, but their powers in the adjudication of state-created rights are limited.

■ Moreover, even if local District of Columbia enactments were to be considered to be in some way equivalent to "state law" for purposes of construing the core/non-core dichotomy in the provisions of Title 28 concerning bankruptcy, I would still conclude that Congress has not exceeded its constitutional authority by labeling this proceeding, in which a claim arising under local law is involved, a core proceeding. Unlike *Marathon*, the principal defendant in this proceeding is a creditor of the debtors. Indeed, the very filing of the debtors' bankruptcy petition was no doubt precipitated by the imminent foreclosure of the debtors' home by this defendant. Moreover, adjustment of the debtor-creditor relationship, which is at the heart of any bankruptcy case, is also what this adversary proceeding is all about.[7] *See* 28 U.S.C. § 157(b)(2)(0); *Marathon*, 458 U.S. at 71, 102 S.Ct. at 2871, 73 L.Ed.2d at 615 ("... restructuring of debtor-creditor relations ... is at the core of the federal bank-

ruptcy power...."). For each of these two reasons, I conclude that the fact that one of the two counts in this proceeding may have arisen entirely under local law does not invalidate the conclusion that Congress could constitutionally denominate this a core proceeding.

## IV

■ Two other provisions of the new statute require discussion. The first, to be discussed in this Part IV of this Opinion, is the mandatory abstention provision found in Title 28 U.S.C. § 1334(c)(2). That section mandates abstention in any "proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section ... if an action is commenced, and can be timely adjudicated in a State forum of appropriate jurisdiction." For several reasons I conclude that the mandatory abstention provision does not apply.

*First*, mandatory abstention applies only in non-core proceedings—those "related to a case under title 11 but not arising under title 11 or arising in a case under title 11." *Compare* 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine ... all core proceedings ....") *with* § 1334(c)(2) (abstention from hearing a proceeding based upon a state law claim). This is a core proceeding, for the reasons explained at length in Part III above, because it fits within the definitional structure of subsection 157(b)(2), which clarifies the meaning of subsection 157(b)(1).

---

7. The fact that the plaintiffs seek to invalidate the defendants' lien against the plaintiffs' residence based upon a violation of the District of Columbia's usury statute is not fatal to the "core proceeding" characterization. Subsection 157(b)(3) states that the determination of whether or not a proceeding is a core proceeding "shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

 Determination of the allowability of claims, which is denominated a core proceeding by subsection 157(b)(2)(K), quite often involves a bankruptcy judge in making decisions concerning state law. *See In re Moses*, 9 B.R. 370, 373, 7 B.C.D. 413, 414 (Bankr.N.D.Ga.1981). Indeed, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 352–54 (1977), U.S.Code Cong. & Admin.News 1977, pp. 5787, 6307–6310, specifically notes that claims based upon usurious interest rates are unenforceable against the debtor. Disputes concerning such claims must always be resolved by looking to the state usury law.

*Second,* because of the Federal Truth in Lending Act claim, this action could have been commenced in the United States District Court under a combination of that court's federal-question jurisdiction and its pendent jurisdiction. *Greene v. Gabraltar Mortgage Investment Co.,* 488 F.Supp. 177 (D.D.C.1980); *see also Price v. Franklin Investment Co., Inc.,* 574 F.2d 594, 607 (D.C.Cir.1978) (concluding "that the district court did not abuse its discretion in dismissing the pendent claims."). Hence, this action could have been commenced in District Court "absent jurisdiction under" section 1334.

*Third,* at the time this adversary proceeding was brought, no action had been commenced, nor as of this date has any action been commenced, in the District of Columbia Superior Court on the plaintiffs' local-law claims. Therefore, based upon a strict interpretation of the mandatory abstention provision, the statutory requirement that "an action is commenced ... in a State forum of appropriate jurisdiction" has not been met. 28 U.S.C. § 1334(c)(2).

*Fourth,* in view of the delays endemic in the District of Columbia Superior Court, it could well be that an action which might now be commenced in Superior Court could not be "timely adjudicated" in that court. *See Id.*

## V

In view of the fact that Count II of the Complaint alleges violations of the Federal Truth In Lending Act, one more provision of the new law remains to be discussed. The last sentence of subsection 157(d) provides for mandatory withdrawal of the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce."

■ That determination is one to be made by a District Judge if a motion to withdraw the reference is filed. My consideration at this time is limited to the question whether I should *sua sponte* request the District Court to withdraw the

reference because it is clear to me that withdrawal is required by the statute. Although the language "activities affecting interstate commerce" is very broad, the legislative history shows that this language is to be construed narrowly. Representative Kastenmeier, the chief author of the relevant portions of the new statute, during the House debate on the final version of subsection 157(d), said in so many words:

This language is to be construed narrowly. It would, for example, mean related cases which may require consideration of both title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, Securities and Exchange Act of 1934, and similar laws.

130 Cong.Rec. H1850 (daily ed. March 21, 1984).

During the Senate debate, Senator DeConcini, a major sponsor of the 1978 Bankruptcy Act, offered a similarly narrow reading of the mandatory withdrawal provision in subsection 157(d):

This provision concerns mandatory withdrawal of proceedings from the bankruptcy judge where the district court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. The district court should withdraw such proceedings only if the court determines that the assertion that other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered, and should not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding. The district court should refuse withdrawal if withdrawal would unduly delay administration of the case, considering the status of the case, the importance of the proceeding to the case, and the relative caseloads of the district court and bankruptcy judge.

130 Cong.Rec. S6081 (daily ed. June 19, 1984). Indeed, as the district court ob-

served in *In re White Motor Corp.*, 42 B.R. 693, 12 B.C.D. 235, 237 (N.D.Ohio 1984):

> The new statute, the most relevant committee report, S.Rep. No. 55, 98th Cong., 1st Sess ..., and legislative debate reveal a broad congressional intent to retain as much as possible of the bankruptcy court structure created by the 1978 Act, within the constitutional constraints spelled out in *Marathon.*

Pursuant to this legislative history and case authority, I conclude that, for two reasons, the statute can be construed so as not to compel the District Court to withdraw the reference, even though the Federal Truth In Lending Act was enacted pursuant to and has been upheld as within Congress's powers under the Commerce Clause. *See* 15 U.S.C. § 1601 *et seq.; Mourning v. Family Publication Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

### A

The first reason for concluding that the District Court can legitimately construe the statute so as not to require mandatory withdrawal is based upon close attention to the statutory language, and the fact that the underlying nature of this adversary proceeding is to seek an adjustment of the debtor-creditor relationship the resolution of which is central to disposition of the Debtors' entire bankruptcy case itself. *See* 28 U.S.C. § 157(b)(2)(0). Subsection 157(d) is couched in such a way that, for withdrawal of the reference to be mandatory, the District Court must determine that "resolution of the proceeding *requires* consideration of *both* title 11 *and*" other federal laws affecting interstate commerce. (Emphasis added). As will now be explained, resolution of this adversary proceeding does not *require* consideration of *Title 11.* It does of course require consideration of the jurisdictional provisions relating to bankruptcy courts and district courts. However, those jurisdictional provisions are contained in Title 28, not Title 11.[8]

At first blush, the result of this analysis appears anomalous: the bankruptcy court

---

**8.** In this proceeding, the Court need not even make the elementary determination that "property of the estate," as defined in 11 U.S.C. § 541, is at issue. Insofar as plaintiffs seek an "order to turn over property of the estate," 28 U.S.C. § 157(b)(2)(E), that elementary determination would indeed be involved. But plaintiffs also seek a "determination of the validity [and] extent ... of [defendants'] lien" against their home, under 28 U.S.C. § 157(b)(2)(K). Subsection (K), unlike subsection (E), contains no reference to "property of the estate." In order for a proceeding to be a core proceeding under subsection (K), it is not necessary that "property of the estate" be involved. Just as the automatic stay of 11 U.S.C. § 362(a)(4) and (5) protects *both* "property of the estate" *and* "property of the debtor" against lien enforcement, just so does 28 U.S.C. § 157(b)(2)(K) make determination of the validity and extent of a lien a core proceeding, without regard to whether the lien is on "property of the estate" or "property of the debtor." Thus, *final* resolution of this adversary proceeding may be made, by determining whether or not defendants' lien is valid, without any determination ever being *required* as to whether these Debtors' home is "property of the estate" or "property of the debtor[s]."

Even 11 U.S.C. § 105, the general grant of "all-writs" authority contained in Title 11, in subsection (c) simply refers back to title 28 for determination of the scope of authority granted in § 105. Thus: "[T]he ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation."

Nor does the fact that the outcome of this adversary proceeding will profoundly affect the allowance or disallowance of the defendants' claims in the Debtors' bankruptcy case, under 11 U.S.C. § 502, mean that consideration of 11 U.S.C. § 502 is required in order to resolve this adversary proceeding. Allowance of claims is a separate step that occurs in the bankruptcy case itself, not in any adversary proceeding. The allowable amount of the claim will no doubt be fixed by the result of the adversary proceeding, by virtue of principles of *res judicata* and collateral estoppel. But that fact does not make the determination of allowability a part of the adversary proceeding, any more than a judgment of any other court of competent jurisdiction which is binding upon debtors would mean that the other court is involved in consideration of § 502 when it renders its decision.

may render a final decision (subject to appeal) because resolution of an adversary proceeding does *not* require consideration of substantive bankruptcy law, and the district court may decline to withdraw the reference although the proceeding *does* require consideration of a federal law concerning interstate commerce.[9] However, as Professors Hart and Wechsler have pointed out, similarly anomalous is Title 28 U.S.C. § 1441(c), the federal district court "removal" statute, as enacted by Congress and definitively interpreted and upheld by the Supreme Court in *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). Thus:

> When a matter which would be independently within federal jurisdiction is associated in a state court proceeding with matters which would not be independently within federal jurisdiction, the whole proceeding can be removed to the federal court if the state and federal matters are sufficiently *disconnected.*

Hart and Wechsler, *The Federal Courts and the Federal System* 1046 (1953) (emphasis in original).

In both instances the seemingly anomalous interpretation may be justified by reference to congressional purposes and intent. In subsection 1441(c) Congress's purpose and intent was to limit removal from state to federal courts. In the 1984 Amendments to the Bankruptcy Code, Congress's broad purpose was "to retain as much as possible of the bankruptcy court structure created by the 1978 Act, within the constitutional constraints spelled out in *Marathon.*" *In re White Motor Corp.*, 42 B.R. 693, 12 B.C.D. at 237. And Congress's specific intent as to the mandatory abstention language of subsection 157(d) was that such language "be construed narrowly." 130 Cong.Rec. H1850 (daily ed. March 21, 1984) (remarks of Rep. Kasten-

meier); S.Rep. No. 55, 98th Cong., 1st Sess. 16 (1983).

If the district courts are *compelled* to withdraw the reference as to every proceeding which requires consideration of any Federal law "affecting interest commerce," whether or not the proceeding also requires consideration of substantive bankruptcy law, their already overcrowded dockets may become overwhelmed. In addition, delay and added expense in disposition of bankruptcy cases will become inevitable, to the detriment of both debtors and creditors. The Bankruptcy Reform Act of 1978 was intended to permit prompt and efficient disposition of bankruptcy cases, for the benefit of all parties. To that end, the 1978 Act provided that almost all related proceedings should be heard and decided by one court—the same court which was responsible for hearing and deciding the entire bankruptcy case. Farming out isolated bits and pieces to other courts which have their own priorities, and which have no responsibility for hearing or deciding the bankruptcy case as a whole, is not conducive to prompt and efficient disposition of bankruptcy cases. Thus, I conclude that strict construction of the words Congress has chosen, together with consideration of Congress's purpose and intent, permits the conclusion that mandatory withdrawal need not apply in this proceeding.

**B**

The second reason for concluding that I should not *sua sponte* request the District Court to withdraw the reference of this proceeding depends upon the rules of *ejusdem generis* and *noscitur a sociis*, and upon examination of the legislative history to the 1984 Amendments. After such examination, I am persuaded, for the reasons set forth below, that the District Court can legitimately conclude that Congress did not

---

9. Another seeming anomaly is that this adversary proceeding can be a "core" proceeding even though its resolution does not require consideration of Title 11. The reasons why this is a core proceeding are explained at length in Part IV above. The seeming anomaly disappears upon consideration of those reasons. This is a core proceeding because of the identity and action of the principal defendant (a creditor that has filed a proof of claim), as well as the fact that this proceeding has been brought to obtain an "adjustment of the debtor-creditor relationship" (albeit by means of local and federal laws that are distinct from the bankruptcy law itself).

intend that *all* situations in which federal interstate commerce laws are considered compel withdrawal, even if resolution of the proceeding requires not only consideration of those laws, but also of Title 11. The legislative history is quite explicit that Congress intended the mandatory-withdrawal language of subsection 157(d) to be "construed narrowly." *See* 130 Cong.Rec. H1850 (daily ed. March 21, 1984) (remarks of Rep. Kastenmeier); *see also* S.Rep. No. 55, 98th Cong., 1st Sess. 16 (1983) ("the Committee intends ... mandatory recall be construed narrowly"). As the Supreme Court has long noted, the primary rule of statutory interpretation is to ascertain the legislative intent behind the statute. *Jones v. New York Guaranty & Indemnity Co.,* 101 U.S. (11 Otto) 622, 25 L.Ed. 1030 (1879). Here, the intent that the statute be read narrowly is set forth clearly. *See Rice v. Rehner,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983) (comments of sponsor of language ultimately used in statute are an authoritative guide to interpretation). The courts, then, should give effect to the legislative intent. *United States v. American Trucking Associations,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, *reh'g denied,* 311 U.S. 724, 61 S.Ct. 53, 85 L.Ed. 472 (1940). It is "a traditional canon of statutory construction" that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers." *United Housing Found., Inc. v. Forman,* 421 U.S. 837, 849, 95 S.Ct. 2051, 2059, 44 L.Ed.2d 621, 630 (1975) (quoting and following *Church of the Holy Trinity v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892)).

▪ During the House debate it was brought to the attention of the chief author of the mandatory withdrawal provision, Representative Kastenmeier, that the statutory language, "activities affecting interstate commerce," is very broad and if interpreted literally could be used to remove most bankruptcy proceedings to the district court. 130 Cong.Rec. H1850 (remarks of Rep. Kramer). In response, Representative Kastenmeier emphasized that the language should be "construed narrowly" and cited the "National Labor Relations Act [ "NLRA" ], civil rights laws, Securities and Exchange Act of 1934 [ "SEA" ], and similar laws" as examples of those federal laws within the scope of subsection 157(d) and the intendment of Congress. *Id.* (remarks of Rep. Kastenmeier). Of Representative Kastenmeier's three examples of federal interstate-commerce laws intended to trigger mandatory withdrawal, two are specific statutes (the National Labor Relations Act and the Securities and Exchange Act of 1934), but one of his three examples ("civil rights laws") is a general reference. When general and specific terms are used in association, and when an analogous meaning is possible, then, according to the rule of *ejusdem generis,* the general terms should be restricted to a sense similar to the specific terms. *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Similarly, "[t]he maxim *noscitur a sociis,* that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859, 863 (1961).

▪ The logic of *ejusdum generis* and *noscitur a sociis* is to look at the substantive similarities of the specific items, and based upon these substantive similarities, to interpret a specific sense to the more general items. Applying this logical process to Representative Kastenmeier's examples, an obvious shared characteristic of the NLRB and the SEA is that both are administered and enforced by a federal administrative agency, the National Labor Relations Board [ "NLRB" ] and the Securities and Exchange Commission [ "SEC" ], respectively. *See* 29 U.S.C. §§ 160 and 161; 15 U.S.C. § 78d. Furthermore, the decisions of both the NLRB and the SEC are subject to the exclusive review of the federal judiciary. 29 U.S.C. § 160(f); 15 U.S.C. § 78y. In view of Congress's intent to restrict the scope of § 157(d)'s mandato-

ry withdrawal provision, and in view of the nature of two of the three examples of laws subject to that provision that the provision's chief author has provided, it is reasonable to conclude that the only federal laws affecting interstate commerce meant to be subject to mandatory withdrawal are those that (1) are in the first instance exclusively administered and enforced by a federal agency and (2) provide for exclusive review by the federal judiciary of the enforcing agency's decisions.

It is true that not all "civil rights laws" fit within this category. Indeed, some civil rights laws are such that this Court can discern no principled basis for exclusion of *any* commerce-clause law if such civil rights laws are to be included.[10] But this result would be directly contrary to the legislative intent that the mandatory-withdrawal language be "construed narrowly" and be restricted to laws "similar" to the cited examples.

The principles of *ejusdem generis* and *noscitur a sociis* solve the problem. Rep. Kastenmeier's reference to "civil rights laws," sandwiched between his references to the NLRB and the SEA, must have meant to refer *only* to those civil rights laws that are "similar" to NLRA and SEA. The only kind of similarity discernible to this Court is similarity in mode of enforcement. Title VII of the Civil Rights Act of 1964 comes to mind. *See* 42 U.S.C. §§ 701–718, as amended by 42 U.S.C. §§ 2000e to 2000e–17. Title VII vests the Equal Employment Opportunity Commission ("EEOC") with exclusive jurisdiction over charges by individuals that they have

been subjected to employment discrimination in violation of the substantive provisions of Title VII. Only after first proceeding before the EEOC does an individual have the right to file suit in a federal district court.[11] 42 U.S.C. § 2000e–5(f).

The Federal Truth In Lending Act, upon which Count II of this adversary proceeding is based, is unlike any of the cited examples of federal laws affecting interstate commerce which will trigger the mandatory withdrawal provision of subsection 157(d), if "resolution of the proceeding requires consideration of both title 11 and" those laws. 28 U.S.C. § 157(d). Relief under the Truth in Lending Act is not required to be sought in the first instance from a particular federal agency. Rather, the Act provides, alternatively, for administrative enforcement (by one of nine federal agencies), for criminal actions (by the United States Attorney General), and for individual actions (by individual citizens or class actions), each as an independent avenue of redress. 15 U.S.C. §§ 1607, 1611, and 1640. The Truth In Lending Act also specifically authorizes suit to be brought not only "in any United States district court," but also "in any other court of competent jurisdiction." 15 U.S.C. § 1640(e). The statutory authorization for suit "in any other court of competent jurisdiction" evinces that Congress was not concerned that the federal rights there set forth be enforced in a particular federal forum, unlike the schemes established under the NLRA, SEA, and Title VII. Instead, Congress there evinced the desire to grant the widest possible choice of fora to the " 'private attorneys general,' individual

10. *See Daniel v. Paul,* 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969); *Katzenbach v. McClung,* 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964); *Heart of Atlanta Motel v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

11. In *In re White Motor Corp.,* the court recognized that the legislative history of subsection 157(d) expressed congressional desire to limit the scope of the subsection's language. 42 B.R. 693, 12 B.C.D. 235, 239 (N.D.Ohio 1984). In that case, however, the parties had stipulated that the federal laws there under consideration (the Employee Retirement Income Security Act of

1974, 29 U.S.C. § 1301 *et seq.,* and the Internal Revenue Code, 26 U.S.C. § 401 *et seq.*) "are 'laws of the United States regulating organizations or activities affecting interstate commerce' within the meaning of § 157(d)." *Id.,* 42 B.R. 693, 12 B.C.D. at 240. It is worthy of note that both of these federal statutes are usually administered and enforced by federal administrative agencies (the Department of Labor and the Department of Treasury), and the decisions of those agencies are subject to review exclusively by the federal judiciary. *See* 29 U.S.C. § 1301 *et seq.* and 26 U.S.C. § 7402.

borrowers who by suing lenders for alleged violations could achieve widespread compliance without government [administrative and executive agencies'] intervention." *Bizier v. Globe Financial Services, Inc.* 654 F.2d 1, 2 (1st Cir.1981). Bankruptcy courts are the only federal courts that are intimately involved on a day-to-day basis with questions of adjustment of debtor-creditor relations. Surely, it would be perverse to hold that, of all courts, Congress intended by § 157(d) to deprive bankruptcy courts of jurisdiction to hear and decide Federal Truth in Lending Act claims.

■■■ Therefore, taking into consideration Congress's purpose that the 1984 Amendments be construed to retain as much of the 1978 Act's court structure as constitutionally permissible, Congress's intent that subsection 157(d)'s mandatory withdrawal provision be "construed narrowly," Congress's desire that mandatory withdrawal not be used to delay administration of a case or be used as an "escape hatch" to remove most matters from the bankruptcy courts, and Congress's intent to grant the widest possible choice of fora for enforcement of Federal Truth in Lending Act claims, I believe that the District Court could rationally and reasonably conclude that the Truth In Lending Act is not the kind of Federal interstate-commerce law which Congress had in mind when it enacted the mandatory withdrawal provision of subsection 157(d). Hence, I will not *sua sponte* request the District Court to withdraw the reference.

Whether or not the District Court actually must withdraw the reference pursuant to the mandatory withdrawal provision will, of course, become a matter for that Court rather than for this Court to decide if a timely motion for withdrawal is hereafter filed. Further, whether "cause" exists for discretionary withdrawal is quite another question, which also will be for the District Court to decide if an appropriate motion is timely filed,[12] or if the District Court on its own motion or on a request by this Court should hereafter have before it the question of discretionary withdrawal.

For all the foregoing reasons, it is ORDERED, on September 30, 1985, that plaintiffs' "motion to remand" this adversary proceeding to the District Court is DENIED.

12. On July 9, 1985, after the filing of plaintiffs' "motion to remand," but before the date of this opinion, the United States District Court for the District of Columbia adopted Interim Local Rules concerning Administration of the Bankruptcy System. Rule 602 sets forth detailed procedures concerning withdrawal of reference, including a provision as to timeliness. Federal Rule 6 and the analogous Bankruptcy Rule 9006 provide ample discretion to the District Court to extend the time for filing a motion to withdraw the reference in this adversary proceeding, should that Court choose to do so.